■ In the Matter of WESTCHESTER COUNTY DEPARTMENT OF SOCIAL SERVICES, on Behalf of EDWARD EARL A., Also Known as EDWARD G., JR., a Child Alleged to be Neglected, Respondent. EDWARD G., SR., Appellant. (Proceeding No. 1.) In the Matter of WESTCHESTER COUNTY DEPARTMENT OF SOCIAL SERVICES, on Behalf of LORRAINE LUCILLE G., a Child Alleged to be Neglected, Respondent. EDWARD G., SR., Appellant. (Proceeding No. 2.) In the Matter of WESTCHESTER COUNTY DEPARTMENT OF SOCIAL SERVICES, on Behalf of LISA RENEE G., a Child Alleged to be Neglected, Respondent. EDWARD G., SR., Appellant. (Proceeding No. 3.) [638 NYS2d 969] —In three proceedings pursuant to Social Services Law § 384-b to adjudicate Edward Earl A. a/k/a Edward G., Jr., Lorraine Lucille G., and Lisa Renee G. permanently neglected children and to terminate the father Edward G., Sr.'s parental rights, the appeal is from three orders (one for each child) of the Family Court, Westchester County (Braslow, J.), all dated June 26, 1995, which, after a hearing, revoked a suspended judgment of the same court dated June 16, 1992, terminated the father's parental rights with respect to the children, transferred guardianship and custody of the children to the Westchester County Department of Social Services, and authorized their adoption without further notice to the father.

Ordered that the orders are affirmed, without costs or disbursements.

Prior to the commencement of a fact-finding hearing on May 8, 1992, the petitions of the Westchester County Department of Social Services (hereinafter the DSS) were resolved by the parents' consent to findings that each had permanently neglected their three children. Thereafter, on the consent of the parents, a judgment terminating their parental rights and providing for their cooperation in the adoption of the children was entered. Enforcement of that judgment was suspended, on consent, for one year, until May 8, 1993, pursuant to Family Court Act § 631 (b) and § 633 (b), to provide time for the adoption of the children by the paternal grandmother. That plan

was originally agreed to by both parents. During the suspension period, the parents agreed to several conditions, including, *inter alia,* that they would cooperate in the adoption process and consent to the adoption when it came before the court for judicial approval. Thereafter, the suspension was extended for a second year. The court considered the fact that the adoption process was not completed by May 1993 to be an "exceptional circumstance" under Family Court Act § 663 (b) warranting the extension of the suspended judgment for an additional year, until May 8, 1994. The parents remained subject to the same conditions requiring that they cooperate with and consent to the adoption of the children by the paternal grandmother.

In March 1994, before the extension of the suspended judgment had expired, the DSS presented the mother with a petition to extend the placement of the children in foster care. The mother initially entered a denial to that petition, and informed the DSS that she wished to regain custody. Subsequently, she again consented to the children's adoption by the children's paternal grandmother.

By order to show cause dated May 2, 1994, prior to the expiration of the extension period for the suspended judgment, the DSS moved pursuant to Family Court Act § 631 (b) and 22 NYCRR 205.50 (e) to further extend the suspended judgment, or to revoke it and commit the children to the custody of the DSS in order to permit them to be placed for adoption. The matter was then placed on the Family Court calendar for May 6, 1994. On May 6, 1994, both parents entered denials to the motion of the DSS. The matter was then adjourned until July 29, 1994. In the interim in June 1994 the parties appeared in Family Court and both parents refused to sign the surrender documents prepared by the DSS.

A combined hearing on the DSS's application to extend or revoke the Order of Suspended Judgment, and a de novo dispositional hearing pursuant to Family Court Act § 631 was rescheduled several times, until it finally occurred in three stages from March through May 1995. At the conclusion of the hearing, although the court found that the order extending the suspended judgment had expired on May 8, 1994, it granted the application of the DSS to terminate the parental rights of both the appellant and the children's mother, committed the children to the guardianship and custody of the DSS, and authorized the agency to place the children for adoption without further notice to either parent.

The appellant contends that the entry of the order extending the suspended judgment did not constitute his assent to an in-

definite delay of the disposition of the proceedings to terminate his parental rights and that once the order extending the suspended judgment expired on May 8, 1994, the petitions should have been dismissed.

We agree with the Family Court, however, that the parties were aware that at the hearing which was eventually held in 1995 the Family Court would consider whether to extend or revoke the order extending the suspended judgment under 22 NYCRR 205.50 (d) (1), (4) as well as make a de novo determination as to whether or not to terminate parental rights. Under all of the circumstances present here, the Family Court properly held such a hearing (see, Matter of Changa W., 123 AD2d 435). Further, we also find that at the conclusion of that hearing the Family Court properly concluded that although the suspended judgment had expired on May 8, 1994, the appellant's parental rights should be terminated and the children placed in the custody of the DSS for eventual adoption by their paternal grandmother. Santucci, J. P., Krausman, Goldstein and Florio, JJ., concur.